16782

TOWN OF FOREST ACRES *ET AL. v.* SEIGLER *ET AL.*
(77 S. E. (2d) 900)

*Mr. Chas. F. Cooper,* of Columbia, *for Appellants,*

*Messrs. Belser & Belser,* of Columbia, *for Respondents,*

*Mr. Chas. F. Cooper,* of Columbia, *For Appellants, in Reply,*

Sept. 28, 1953.

OXNER, Justice.

The question presented by this appeal is whether under the statutes of this state, a portion of one municipality may be annexed to another without submitting the question of

said detachment to the voters of the municipality whose area is to be reduced.

The towns of Forest Acres and Forest Lake, both small municipal corporations, are adjacent. A petition was filed by a majority of the freeholders of an area consisting of a portion of the town of Forest Acres and some contiguous territory not within the corporate limits of any municipality, asking that an election be ordered on the question of whether such area should be annexed to the town of Forest Lake. After due notice, the question of annexation was submitted to both the qualified electors of the town of Forest Lake and those of the area proposed to be annexed at an election held on April 22, 1952, and resulted favorably to annexation. The question was not submitted to the voters of the town of Forest Acres as a whole.

This action was brought by the town of Forest Acres and others for the purpose of having the purported annexation declared invalid. It is stated in the circuit decree that the case was submitted to the Court below upon "the single controlling issue of whether or not a town can legally and validly annex a *portion* of the territory within the municipal limits of an adjacent validly organized and functioning town, thereby reducing the second town's limits, merely by following the procedure prescribed by Sections 7230 (as amended by Act No. 806 of the 1948 Acts, 45 Stats. at Large 1974) and 7231 of the 1942 Code providing for extension of the corporate limits of municipalities, and without compliance with the requirements of Section 7232 of the 1942 Code prescribing the procedure for reduction of the corporate limits of a city or town."

The Court below held the annexation invalid on the ground that there had been no compliance with Section 7232. The correctness of this conclusion is challenged on this appeal. Defendants, appellants here, contend that Sections 7230 and 7231 of the 1942 Code authorize the annexation not only of unincorporated areas but also of any portion of the territory of an adjacent municipality, by submitting the question

to the voters of the area to be annexed and those of the municipality to be enlarged, and that where a portion of a municipality is annexed, it is not necessary to submit the question to all the voters of the municipality whose area is to be detached. Not raised in the Court below but urged on this appeal is the further contention that any doubt as to the soundness of the foregoing construction was removed by the change in phraseology of Section 7231 made in the Code of 1952, which it is claimed "clarified" the meaning of Section 7231 so as to clearly authorize the annexation of a portion of a municipality. We shall first determine the question before us under the provisions of the 1942 Code and shall later consider what effect should be given to certain change in phraseology made in the statutory law by the 1952 Code.

Section 7230 authorizes a town to extend its corporate limits. As amended by Act No. 806 of the Acts of 1948, 45 St. at L. 1974, the procedure fixed is substantially as follows: A petition must first be submitted to the town council by a majority of the freeholders of the territory which it is proposed to annex, asking that an election be ordered to determine whether such territory shall be included in said town. An election, of which there must be due notice, is then held both within the corporate limits of the municipality and within the territory proposed to be annexed. The votes cast at such election within the municipality and those within the territory proposed to be annexed are required to be counted separately and the results declared separately. If a majority of the votes cast in each instance shall be in favor of the annexation, the town council shall then declare the annexed territory a part of said town.

Section 7231 reads:

"Whenever it is proposed to extend the corporate limits of any city or town in this State so as to include any adjacent territory under the provisions of section 7230, whether the said adjacent territory be in whole or in part in incorporated municipality, it shall be lawful for said city or town

and such adjacent territory to stipulate and agree upon terms of consolidation, and such stipulations shall become a binding contract upon the city or town when enlarged: provided, that such stipulations shall be printed in full, or fully identified by reference to some easily accessible publication thereof in full, on a majority of the affirmative votes cast at the election held under the requirements of the preceding section, both in the city or town seeking enlargement and in the territory or portion of territory so included as a result of such election."

Section 7232(1) is as follows:

"Any town or city may reduce its corporate limits in the following manner: whenever a petition is presented to the town council signed by a majority of the resident freeholders of said town asking for a reduction of the corporate limits of said town, then said council shall order an election after not less than ten days' public advertisement; such advertisement shall describe the territory that is proposed to be cut off. At such election, should a majority of the qualified electors vote in favor of the release of the territory, then said council shall issue an ordinance declaring the territory no longer a portion of said town, and shall so notify the secretary of state, furnishing him at the same time with the new boundaries of said town."

Before proceeding to construe the foregoing sections, we shall pass upon respondents' contention that there is a typographical error in the clause of Section 7231, reading "whether the said adjacent territory be in whole or in part *in* incorporated municipality." (Italics ours.) In the original act this was worded, "whether the said adjacent territory be in whole or in part *an* incorporated municipality." (Italics ours.) The phraseology of the original act is correctly set out in 27 St., page 22. Thereafter, however, a typographical error was apparently made in incorporating this clause in the 1912 Code, the word "an" being changed to "in." The error has been perpetuated in the subsequent codes. In respondents' brief it is stated that appellants ad-

mitted in the lower court that the foregoing clause in Section 7231 should be corrected so as to read in accordance with the original act. There is no specific denial of this statement by appellants. Be that as it may, the error is apparent and we think can, and should be, corrected.

Where the meaning of a provision in the Code is plain and unambiguous, it has been held that the Court cannot recur to the original statute for the purpose of ascertaining its meaning, *Independence Insurance Co. v. Independent Life & Accident Insurance Co.,* 218 S. C. 22, 61 S. E. (2d) 399, but in case of doubt and ambiguity, resort may be had to the act from which the provision was derived. *Faust v. Bonnett,* 110 S. C. 435, 96 S. E. 489; *Palmetto Lumber Co. v. Southern Railway,* 154 S. C. 129, 151 S. E. 279; 50 Am. Jur., Statutes, Section 446. Indeed, we have not hesitated to correct obvious clerical mistakes, both in statutes and in the code, when necessary to give effect to the intention of the Legislature. A number of cases to this effect are reviewed in *Ashley v. Ware Shoals Mfg. Co.,* 210 S. C. 273, 42 S. E. (2d) 390. In the *Ashley case,* the word "usual" appearing in a section of the 1942 Code was construed to mean "unusual," the phraseology used in the original act. We had occasion to apply this principle in the recent case of *Arkwright Mills v. Murph,* 219 S. C. 438, 65 S. E. (2d) 665.

We shall now undertake to determine whether under Sections 7230 and 7231, as corrected in the manner above stated, the annexation in controversy could be made without submitting to the voters of the town of Forest Acres the question of whether a portion of that town should be detached.

Our Constitution imposes no restriction on the legislature with reference to extending the corporate limits of municipalities. *Whitmire v. Cass, Mayor,* 213 S. C. 230, 49 S. E. (2d) 1. In the absence of such constitutional inhibition, the legislature has plenary power over

municipalities, including the right to regulate the manner in which the boundaries of such governmental units may be extended or diminished. McQuillin, Municipal Corporations, 3rd Ed., Vol. 2, Sections 7.10 and 7.24. "Unless forbidden by organic law the legislature is not limited with respect to the character of territory that may be embraced within municipal boundaries." Id., Section 7.18.

While legislature may by express statutory enactment confer power upon a municipality to annex all or part of another municipality adjacent to it, in absence of legislative enactment authorizing annexation of adjacent municipal territory in direct terms, it is generally held that a municipality does not have authority to extend its limits into organized areas. *State ex rel. Village of Fridley v. City of Columbia Heights, Minn.,* 53 N. W. (2d) 831, 832. In that case it was held that the power to annex all or part of another adjacent municipality cannot be implied from the statutory power conferred on municipalities to annex "adjacent or contiguous platted territory." In *Kirkpatrick v. State,* 5 Kan. 673, it was held that a statute authorizing a municipal corporation to annex territory adjacent to its limits, does not authorize the annexation of organized territory, unorganized territory only being intended. In *Village of North Fargo v. City of Fargo,* 49 N. Dak. 597, 192 N. W. 977, 981, the Court said:

"Power to annex the territory of another municipal corporation is not necessarily implied from or necessarily incident to the power granted to annex adjacent or contiguous platted territory. Nor is such power absolutely essential to the declared objects and purposes of the corporation. In the statute under consideration, such power is not given in express terms; if given at all, it must be deduced from language giving power of annexation in general terms. In view of what has been said heretofore and of the statutes which provide for the manner in which territory may be detached from an incorporated village, it seems that the doubt as to the existence of the power in a city to detach and annex a

portion of the territory of an incorporated village must be resolved against the city."

It is true that in *Nexsen v. Board of Supervisors of Elizabeth City County*, 142 Va. 313, 128 S. E. 570, 571, the Court construed a statute providing for the extension of the corporate limits of municipalities by including "outlying territory adjacent to a town or city," as meaning incorporated territory as well as unincorporated territory, but it is apparent from the decision that the Court was considerably influenced by kindred statutes in Virginia tending to sustain the view adopted. Moreover, the annexation there included an entire town, rather than a portion of it.

When Sections 7230 and 7231 of the 1942 Code are considered in the light of the foregoing principles, we do not think that they authorize the annexation of a portion of a municipality unless such portion is detached in the manner provided by Section 7232. It will be noted that Section 7230 only authorizes in general terms the extension of the corporate limits of a town or city and prescribes the procedure to be followed. It does not undertake to define the kind or character of territory which may be annexed. Under the decisions just reviewed, a general authorization of this kind will not be construed to include the right to annex a portion of an adjacent municipality. While the primary purpose of Section 7231 was to authorize a municipality and the area proposed to be annexed to "agree upon terms of consolidation" which are given the effect of a binding contract, it would seem that the clause in this section reading, as corrected by us, "whether the said adjacent territory be in whole or in part an incorporated municipality," also by implication authorizes the annexation of an *entire* municipality, or an area consisting in part of a municipality and in part of unincorporated territory. But we do not think this language can reasonably be construed as authorizing the annexation of a *portion* of an adjacent municipality. If the legislature had intended to confer such power, we think it would have expressly said so. Authority of such

importance and having such far-reaching consequences will not be implied. We are not at liberty to construe this clause as if it read "whether said adjacent territory be *all or part of* an incorporated municipality."

The correctness of the foregoing construction of Section 7231 becomes more apparent when considered in connection with Section 7232 authorizing a town or city to reduce its corporate limits and fixing the procedure to be followed. It will be noted that under Section 7232, in order to reduce the corporate limits of a municipality, a petition asking for such reduction must be signed by a majority of the resident freeholders of said town, after which a majority of the qualified electors must vote in favor of releasing the territory involved. It was clearly the intention of the legislature that the voters of the *entire* town should have a voice in determining the question of detachment.

Appellants' view does not give effect to Section 7232 which, if possible, must be harmonized with the preceding sections relating to the enlargement of the corporate limits of a municipality. Statutes of a similar character were before the Supreme Court of Wisconsin in *City of Wauwatosa v. City of Milwaukee,* 180 Wis. 310, 192 N. W. 982, 983. Sections 925–17 and 925–18 of the Wisconsin statutes authorized the annexation by a municipality of territory lying adjacent thereto, upon the petition of a certain percentage of the electors and property owners in the area proposed to be annexed. Section 925–21a authorized the common council of a municipality to detach a part of its territory upon the petition of a certain proportion of those owning property in the area proposed to be detached. In holding that adjacent territory may not be detached from one municipality and annexed to another without the consent of the common council of the former, as provided by Section 925–21a, the Court said:

"In view of the substantial right thus recognized in the plaintiff as a corporate entity, to and over its corporate ter-

ritory, the general language in sections 925–17 and 925–18 covering the broad and general field of annexation of territory and referring to territory lying adjacent to any such city, must properly be construed in connection with the express language of section 925–21a, *supra,* providing for the more limited field of detachment of municipal territory.

"The two statutes, where the literal enforcement of the one clashes with the literal enforcement of the other, must be construed together and harmonized, if possible, so as to permit effect to be given to each, and where such broad and general language is used in the one as would, if construed literally and separately, as desired by defendant, nullify the evident purpose and express language of the other, it is our duty to prune down the literal language or possible broad construction of the one so as to leave vitality in the other."

In addition to the foregoing, it is difficult to believe that the legislature would authorize the annexation of a portion of a municipality without setting up some machinery for apportioning the debts, disposing of community property and otherwise adjusting the fiscal affairs of the areas involved.

Having concluded that the annexation is invalid under the statutory law of this state as it existed prior to the adoption of the 1952 Code, we shall now determine whether the latter requires a different result.

The annexation proceedings in the instant case were had in April, 1952. This case was heard by the Circuit Judge in September, 1952, and his decree was rendered on November 26, 1952. In March, 1952, the General Assembly passed an act adopting the 1952 Code and declaring same "to be the only general statutory law of the State on the 8th day of January, 1952." It was provided that this act should take effect immediately upon its approval by the Governor, but it was not approved by him until November 19, 1952. The result is that the 1952 Code had not gone into effect when the annexation proceedings were had, nor was

it in effect when the case was heard by the Circuit Judge. Indeed, it is common knowledge that the 1952 Code was not available when the decision of the lower Court was filed. The case was tried below solely under the provisions of the 1942 Code.

Appellants contend that the General Assembly was empowered to give the adoption of the Code retroactive effect and that although the adopting act was not approved by the Governor until November, 1952, it became effective as of January 8, 1952, or prior to the annexation proceedings now in controversy, and governs the proceedings before us. They say that any doubt about the construction of Section 7231 of the 1942 Code was entirely removed and the right to annex a portion of a municipality was clearly given under the change in phraseology made in this section by the 1952 Code. Respondents deny that the meaning of Section 7231 was changed by the 1952 Code and assert that even if the change in phraseology is construed as permitting the annexation of a portion of a municipality, such change would not apply to the instant case because the validity of the annexation here must be determined by the law as it stood at the time of the annexation proceedings and the proceedings in the court below.

This feature of the appeal could well be disposed of by applying the well-established rule that this Court will not ordinarily consider questions not raised in the Court below. The question as to the effect of the 1952 Code was not raised before the Circuit Judge and, in fact, could not have been raised because when the case was heard by him, the 1952 Code had not become effective. However, the issue now made for the first time has been ably argued and since the public interest requires that the status of the area sought to be annexed be promptly settled, we shall proceed to determine whether the changes made in the 1952 Code require a different conclusion from that which we have reached under the 1942 Code, and in doing so will assume, without deciding, that the adopting act should be given

retroactive effect so as to apply to the annexation proceedings involved in this case.

Sections 7230, 7231 and 7232 of the 1942 Code now appear as a part of Article 2, Chapter 1, Title 47 of the 1952 Code. The only changes in these sections material to this controversy are those made in the phraseology of Section 7231, which forms Section 47–13 of the 1952 Code. It now reads in part as follows:

"Whenever it is proposed to extend the corporate limits of any city or town in this State under the provisions of this article *when the territory proposed to be annexed be in whole or in part in an incorporated municipality* the city or town and such adjacent territory may stipulate and agree upon terms of consolidation * * *." (Italics ours.)

The clause which we have italicized, as heretofore stated, read in the original act: "Whether the said adjacent territory be in whole or in part an incorporated municipality." In the 1942 Code it read: "Whether the said adjacent territory be in whole or in part in incorporated municipality." It will be noted that the confusion previously brought about by changing "an" to "in" in this clause has now been further aggravated by inserting in lieu thereof "in an." Apparently the compilers of the 1952 Code, in attempting to correct a patent typographical error in the 1942 Code, made no effort to go back to the original act to make the proper correction. The effect of it all, it seems to us, is to create further ambiguity.

In making the foregoing change of phraseology, was there a legislative intent to change the law so as to enable one municipality to annex a portion of another without complying with the statute relating to detachment? "It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the

purpose of ascertaining the intent of the Legislature." *Dennis v. Independent School Dist.,* 166 Iowa 744, 148 N. W. 1007, 1009. In the case of a general revision or codification of the laws, "it is well settled that neither an alteration in phraseology, nor an omission or addition of words, necessarily indicate an alteration of the construction of the earlier act. Indeed, the rule favoring the construction borne by the original statutes or sections is applied, even though in the course of revision or consolidation, the language may have been somewhat changed and the revised or consolidated statutes will be construed as bearing the same meaning as the original statutes or sections, unless the language of the revision or consolidation plainly requires a change of construction to conform to the manifest intent of the legislature. These rules are based upon the fact that the new language may be attributed to a desire to condense and simplify the law, or to improve the phraseology." 50 Am. Jur., Statutes, Section 447.

When the change in phraseology involved in this case is considered in the light of the rule above stated, it certainly does not clearly appear that it was the intention of the legislature to substantially alter the manner in which the corporate limits of a municipality may be extended or restricted. On the contrary, we have a change in phraseology which is ambiguous and the real intent of the legislature can only be gathered by recurring to the original statute.

The situation before us is entirely different from that presented in *State v. Meares,* 148 S. C. 118, 145 S. E. 695, where it was held that a statute omitted from the code is lost. Our problem here is merely the correction of a clerical error.

Whether this appeal is considered under the 1942 Code or under that of 1952, we cannot escape the conclusion that the annexation attempted in this case is invalid for failure to comply with the requirements of Section 7232(1) of the 1942 Code, which now forms Section 47–23 of the 1952 Code. It may be true that only in

rare instances will the voters of a town or city agree to release a portion of its territory so as to permit annexation thereof to another municipality, but this is a matter for consideration by the legislature and not by the courts.

Affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., and G. BADGER BAKER, A.A.J., concur.